Pernell WILSON, Plaintiff,

v.

Sally B. JOHNSON, et al., Defendants.

No. 95–CV–857S.

United States District Court,
W.D. New York.

Feb. 17, 1998.

Pernell Wilson, Comstock, NY, pro se.

Mary C. Baumgarten, Asst. Atty. Gen., Buffalo, NY, for Defendants.

## ORDER

SKRETNY, District Judge.

Whereas this Court, by its Order dated March 15, 1996, referred the above-captioned case to Magistrate Judge Heckman pursuant to 28 U.S.C. § 636(b)(1)(A) and (B);

Whereas Defendants, through counsel, made a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56;

Whereas Magistrate Judge Heckman filed a Report and Recommendation on September 12, 1997, copies of which were mailed to the Plaintiff and counsel for the Defendants by the Clerk of the Court on September 12, 1997, recommending that the Defendants' motion for summary judgment be granted;

Whereas, on September 19, 1997, Plaintiff filed a motion for a court order to "go into property to get his legal work";

Whereas, by order filed on October 22, 1997, this Court referred Plaintiff's September 19, 1997 motion to Magistrate Judge Heckman, and specified that any objections to Magistrate Judge Heckman's September 12, 1997, Report and Recommendation were to be stayed until 10 days following receipt of Magistrate Judge Heckman's decision resolving Plaintiff's September 19, 1997 motion;

Whereas, on January 23, 1998, Magistrate Judge Heckman issued an order denying Plaintiff's motion for a court order to "go into property to get his legal work";

Whereas, no objections to Magistrate Judge Heckman's Report and Recommendation have been received; and

Whereas, after careful review of the Report and Recommendation, as well as the pleadings and materials submitted by the parties,

IT HEREBY IS ORDERED, this Court hereby accepts the Report and Recommendation, and Defendants' motion for summary judgment is GRANTED.

FURTHER, that Plaintiff's complaint is DISMISSED.

SO ORDERED.

## REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

This matter was referred to the undersigned by the Hon. William M. Skretny, to hear and report, in accordance with 28 U.S.C. § 636(b). Defendants have moved for summary judgment.[1] For the reasons that follow, it is recommended that defendants' motion be granted.

### BACKGROUND

On October 4, 1995, plaintiff filed his complaint in this action. He alleges that defendant Sally B. Johnson, Superintendent of the Orleans Correctional Facility maintained by the New York State Department of Corrections ("DOCS"), and defendant Karen Crowley, a DOCS correction counselor, violated his constitutional rights when they assigned him to work in the mess hall of the Orleans facility. He seeks $100,000.00 in compensatory damages.

The following facts are not disputed. On May 5, 1995, plaintiff was transferred to the Orleans facility. He was examined by medical staff on reception. No acute physical problems were observed (Item 21, Ex. A., pp. 4, 37). On May 23, 1995, plaintiff met with the Program Committee at the Orleans facility for a job placement interview. As a result of the interview, plaintiff was assigned to the mess hall, subject to medical clearance (see Crowley Aff., ¶¶ 5–6 (Item 18); Sinha Aff., ¶¶ 6–7 (Item 21); Defendants' Statement of Undisputed Facts, ¶¶ 6–9 (Item 19)).

On May 26, 1995, plaintiff was examined by medical staff. No acute problems were noted, and plaintiff was not taking any medications. However, he was not given medical clearance for his mess hall assignment because he had previously tested positive for tuberculosis (see Item 18, ¶ 8 & Ex. A; Item 21, ¶ 8 & Ex. A, pp. 37, 177–78, 195, 213). On May 30, 1995, plaintiff again met with the Program Committee and was advised that

1. Defendants filed their summary judgment motion on January 27, 1997. On February 12, 1997, this court issued an order granting plaintiff's request for additional time to respond to defendants' motion. On March 31, 1997, plaintiff filed a "Notice of Motion with Affidavit for Summary Judgment Pursuant to Fed.R.Civ.P. (56) Cross Move" (Items 28,29), a *Pro Se* Memorandum of Law Cross Move on Defendants Motion to Dismiss" (Item 30), and a "Summary Judgment Motion to Responses" (Item 31). The information contained in these filings pertains to the issues raised by defendants in their summary judgment motion, and will be considered by the court as plaintiff's response to defendants' motion. There is nothing contained in Items 28–31 to suggest that plaintiff seeks or is entitled to summary judgment in his favor.

additional lab work was needed for medical clearance (Item 18, ¶ 8; Item 19, ¶¶ 13–14).

On June 2, 1995, plaintiff complained to medical staff that he wanted to change his bunk assignment from the top bunk to the lower bunk because he fell out of bed (Item 21, Ex. A, p. 36). He was examined by Dr. Sinha on June 9, 1995. Dr. Sinha found "no medical justification" for reassigning plaintiff to the lower bunk (*id.*). On June 11, 1995, plaintiff wrote a letter to "N.Y.S. Department of Health Director" in which he stated that he had difficulty getting into the top bunk because of a "leg & hip problem" resulting from his involvement in an automobile accident "about two years" prior to his incarceration. He stated that he informed the doctor about his problem, but the doctor told him that there was nothing wrong with him and that he did not need a lower bunk. He stated that if the problem continued he would "drop a law suit on" the Orleans facility (Item 21, Ex. B).

On June 13, 1995, Deputy Superintendent R.J. Kirby notified plaintiff that his June 11, 1995 letter had been forwarded to Dr. Sinha (*id.*). On June 20, 1995, Dr. Sinha sent Mr. Kirby a memorandum in which he explained that plaintiff came to see him on June 9 upon referral from nurse's sick call. Dr. Sinha did not find any evidence to substantiate plaintiff's claim that he fell out of the top bunk (*id.*).

Meanwhile, on June 18, 1995, plaintiff wrote a letter to defendant Crowley, who at the time was the correction counselor assigned to the Program Committee. Plaintiff requested that he be assigned to the afternoon/evening shift in the mess hall, rather than the morning/afternoon shift, because he had a problem getting up in the morning (Item 18, Ex. B). He reiterated this request in a letter dated June 20, 1995 (*id.*). On June 21, 1995, Ms. Crowley notified plaintiff that he would be assigned to the afternoon/evening shift in the mess hall upon medical clearance (*id.*).

Plaintiff was examined by Dr. Sinha on June 19, 1995, and was cleared for food service work without restrictions (Item 21, Ex. A, p. 36; Item 18, Ex. D). He began work in the mess hall on June 26, 1995 (Item 19, ¶ 26).

Plaintiff's medical records show that he was seen at the Orleans facility health services unit on June 20, 1995 for instruction on proper hand washing technique (Item 21, Ex. A, p. 35), on June 26, 1995 for cold symptoms (*id.*), and on July 13, 1995 for cold symptoms (*id.*, p. 34). On July 13, 1995 plaintiff also requested a complete physical and an appointment with the facility's psychologist, stating that he was "under stress" (*id.*). He did not attend sick call scheduled for June 21, June 23, July 7 and July 10, 1995 (*id.*, pp. 34–35).

On July 19, 1995, plaintiff was seen by a nurse at the health services unit. He complained about back pain and continuing cold symptoms from working in the mess hall, as well as a history of back problems (*id.*, p. 33). The nurse contacted the mess hall to advise that plaintiff was to be relieved of duty for the remainder of his shift, and placed on light duty for the next few days (*id.*).

On July 21, 1995, plaintiff was examined by Dr. Sinha. Plaintiff requested a general check-up. No medical complaints were noted, and the results of the examination were within normal limits (*id.*).

On August 6, 1995, plaintiff was taken to the emergency room at the Orleans facility. He stated that he had fallen while working in the mess hall and complained of lower right back pain. On examination he had full range of motion, appropriate flexion, extension and rotation, with no warmth, swelling or discoloration. He was given an analgesic and an ice pack, and was advised to report to sick call for follow-up treatment as necessary (*id.*, p. 32). He failed to show for sick call on August 7, August 8 and August 18, 1995 (*id.*, pp. 31–32).

On August 6, 1995, plaintiff wrote to defendant Crowley requesting call-out for a Program Committee meeting. He stated that he was having problems in the mess hall, and requested reassignment to a porter job (Item 18, Ex. E). On August 20, 1995, plaintiff was reassigned to custodial maintenance (*id.*).

On September 5, 1995, plaintiff was brought to the medical unit by wheelchair.

He complained of pain in his left calf resulting from an injury suffered in a basketball game the night before. On examination he had full range of motion with no swelling or discoloration. He was able to bear weight. He was given a knee brace and an ankle brace, and was advised to apply an ice pack as needed. He did not attend sick call scheduled for September 15 and September 25, 1995 (*id.*, p. 31).

Plaintiff was transferred from the Orleans facility to the Oneida Correctional Facility in October, 1995, and was examined by Oneida facility medical staff on October 27, 1995 (*id.*, pp. 4, 31). The "Reception Nursing Assessment" form indicated that plaintiff had complained of mid-back pain off and on for the past six months, but was not under any medical care or taking any medications (*id.*, pp. 4, 30).

Plaintiff's ambulatory health records show that no further complaints of back pain were noted until February 23, 1996, when he requested reassignment to a lower bunk because of back pain (*id.*, p. 26). On February 28, 1996, the facility physician ordered an x-ray of plaintiff's spine (*id.*). On March 5, 1996, an x-ray was taken at the Mohawk Correctional Facility. The radiologist noted curvature of the lumbar spine, and "[e]ssentially unremarkable examination of the thoracic spine" (*id.*, p. 130).

### *DISCUSSION*

### I. Summary Judgment.

 Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether summary judgment is appropriate, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Giano v. Senkowski*, 54 F.3d 1050, 1052 (2d Cir.1995), and must give extra latitude to a *pro se* plaintiff. *McDonald v. Doe*, 650 F.Supp. 858, 861 (S.D.N.Y.1986). Once the moving party has provided sufficient evidence to support a motion for summary judgment, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts asserted by the movant. Fed.R.Civ.P. 56(e); *accord Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525–26 (2d Cir.1994); *Higgins v. Artuz*, 1997 WL 466505, at *3 (S.D.N.Y. August 14, 1997).

In this case, defendants move for summary judgment on the following grounds:

1. The pleadings, affidavits and exhibits submitted on the record fail as a matter of law to demonstrate a violation of plaintiff's eighth amendment right to be free from cruel and unusual punishment;

2. The record fails to demonstrate that defendants Johnson and Crowley were personally involved in the alleged constitutional violation;

3. Defendants are entitled to qualified immunity.

Each of these grounds is discussed in turn below.

### II. Eighth Amendment.

 The eighth amendment protects prisoners from "cruel and unusual punishment" in the form of "unnecessary and wanton infliction of pain" at the hands of prison officials. (citing *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991), and *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). The eighth amendment's prohibition against cruel and unusual punishment includes an inmate's right to be free from conditions of confinement that impose "an excessive risk to [the] inmate['s] health or safety ...." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Hathaway v. Coughlin*, 37 F.3d 63 (2d Cir.1994), *cert. denied sub nom. Foote v. Hathaway*, 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995).

In order to establish that this right has been violated, the inmate must satisfy a two-part test. The first part of the test is objective, and requires the inmate to show that he is incarcerated under conditions posing a substantial risk of serious harm. *Farmer v. Brennan, supra,* 511 U.S. at 834 (quoting *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)).

It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. *Helling v. McKinney,* 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993).

The second prong of the test is subjective and requires the inmate to show that the official had a "sufficiently culpable state of mind." *Id.* 511 U.S. at 834 (quoting *Wilson v. Seiter, supra,* 501 U.S. at 297). The inmate must establish that the official acted or failed to act with deliberate indifference to the inmate's health or safety:

[A] prison official does not act in a deliberately indifferent manner unless that official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

*Hathaway v. Coughlin, supra,* 37 F.3d at 66 (quoting *Farmer v. Brennan, supra* 511 U.S. at 837). Mere negligence or inadvertence on the part of the official does not violate the constitution. *Cole v. Scully,* 1995 WL 231250 at *4 (S.D.N.Y. April 18, 1995)("Negligence is not sufficient, for example—the plaintiff must show conduct that is 'repugnant to the conscience' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society' ")(quoting *Estelle v. Gamble, supra,* 429 U.S. at 102).

In this case, it is clear from the record before the court that plaintiff cannot meet either prong of the test for establishing an eighth amendment violation. Objectively, there is nothing in plaintiff's medical records to show that his back problem was serious enough to prevent him from performing the tasks required of a mess hall worker. The evidence shows that plaintiff was seen by medical staff at the Orleans facility several times prior to beginning work in the mess hall on June 23, 1995. In early June plaintiff complained to the medical staff and to the state Department of Health about his bunk assignment, and mentioned his "leg & hip problem" stemming from an auto accident several years prior. However, he did not complain about his job assignment at that time. Upon physical examination, Dr. Sinha found no medical justification for assigning plaintiff to a lower bunk.

Plaintiff did not mention anything about back pain until July 19. He was given a full physical examination by Dr. Sinha on July 21, and the results were within normal limits. He failed to show for sick call on July 24. He was also examined on August 6, and demonstrated full range of motion, appropriate flexion, extension and rotation, and no swelling or discoloration. He did not show for sick call on August 7, August 8, or August 18. He was next examined on September 5 after he was injured playing basketball. He did not show for sick call on September 15 and 25.

Considered as a whole, this evidence is inconsistent with the theory that assigning plaintiff to work in the mess hall exposed him unwillingly to a risk "so grave that it violates contemporary standards of decency ...." *Helling v. McKinney, supra,* 509 U.S. at 35. Indeed, there is evidence in the record suggesting that plaintiff was not only willing but anxious to begin his assignment. Based on this proof, plaintiff cannot establish that his work assignment placed him at significant risk of serious harm. He has therefore failed to meet the objective prong of the *Farmer v. Brennan* test.

As to the subjective prong, there is nothing in the medical evidence to suggest that defendants Johnson or Crowley knew that plaintiff had a serious back problem and deliberately disregarded it. Plaintiff's ambulatory health record shows that in September of 1994, while he was at the Attica Correc-

tional Facility, he was given a bed board for his back (Item 21, Ex. A. pp. 46, 194). However, as discussed above, plaintiff's records do not reveal any further evidence of back problems prior to May of 1995, when he was assigned to the mess hall by the Program Committee, or June of 1995, when he began working in the mess hall. The fact that plaintiff was issued a bed board in September of 1994, standing alone, is simply insufficient to raise the inference that mess hall work presented a substantial risk of serious harm.

Accordingly, upon extensive review of the pleadings, affidavits and exhibits in the record, I find that there are no triable issues of fact as to whether defendants subjected plaintiff to excessive risk of harm by assigning him to work in the mess hall. Defendants are therefore entitled to summary judgment dismissing plaintiff's eighth amendment claim as a matter of law.

### III. Personal Involvement.

In order to state a claim for relief under § 1983 against a particular defendant, a plaintiff must show that defendant's personal involvement in the purported unlawful conduct. *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986); *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978).

A defendant may be personally involved in a constitutional violation within the meaning of 42 U.S.C. § 1983 in several ways. The defendant may have directly participated in the infraction .... A supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong .... A supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue .... Lastly, a supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event.

*Williams v. Smith, supra,* 781 F.2d at 323–24 (citing cases).

In this case, as the discussion above demonstrates, there is no evidence in the record to show that defendants engaged any unconstitutional conduct, either directly or in a supervisory capacity. There is no proof from which it could be inferred that assigning plaintiff to the mess hall would be likely to aggravate a serious back condition. Instead, the evidence shows that plaintiff agreed to his assignment and wrote letters to Ms. Crowley requesting clarification of his work hours. It was not until July 19, 1995 that plaintiff even mentioned back pain to medical staff. He was treated at that time and was temporarily excused from work that could aggravate his condition. It was not until August 6, 1995 that plaintiff wrote to Ms. Crowley about his problems in the mess hall. Even then, he did not mention his back problem. After a Program Committee meeting, he was reassigned to custodial work.

There is no evidence in the record to suggest defendant Johnson was advised about any health risk connected to plaintiff's job assignment, or that Johnson was advised and failed to take any action. Likewise, there is no evidence to suggest that the facility had a policy of exposing inmates to excessive health or safety risks, that Johnson knew about such a policy and allowed it to continue, or that Johnson was grossly negligent in managing Crowley or any other subordinate.

In the absence of any proof of unconstitutional conduct on the part of defendants Johnson and Crowley in either a direct or supervisory capacity, defendants are entitled to summary judgment dismissing the complaint on the ground of lack of personal involvement.

### IV. Qualified Immunity.

Defendants also move for summary judgment on the ground of qualified immunity. State officials performing discretionary functions in the course of their duties are immune from liability for money damages in suits alleging constitutional violations "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396

(1982)(quoted in *Russell v. Coughlin,* 910 F.2d 75, 78 (2d Cir.1990)). Even when such rights are clearly established, qualified immunity will protect a government official "if it was objectively reasonable for [the official] to believe that his [or her] acts did not violate those rights." *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987); *Russell, supra,* 910 F.2d at 78; *Gittens v. LeFevre,* 891 F.2d 38, 42 (2d Cir.1989). "The objective reasonableness test is met—and the defendant is entitled to immunity—if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995)(quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

Thus, a defendant is entitled to summary judgment on qualified immunity grounds where the court determines as a matter of law that it was objectively reasonable for the defendant to believe that his or her conduct or actions did not violate an established federally protected right. *Lennon, supra,* 66 F.3d at 420. "In other words, if any reasonable trier of fact could find that the defendants' actions were objectively unreasonable, then the defendants are not entitled to summary judgment." *Id.*

In this case, the record clearly demonstrates that it was objectively reasonable for defendants to conclude that assigning plaintiff to work in the mess hall did not violate plaintiff's right to be free from cruel and unusual punishment. As discussed above, there is no evidence to suggest that, at any time during the course of the events complained of, plaintiff had a serious medical condition that would be exacerbated by mess hall work. In light of this record, no reasonable trier of fact could conclude that the actions taken by defendants Crowley and Johnson were objectively unreasonable under the circumstances. Accordingly, defendants are entitled to summary judgment on qualified immunity grounds.

### CONCLUSION

For the foregoing reasons, it is recommended that defendants' motion for summary judgment **(Item 15)** be granted, and the case dismissed.

September 11, 1997.

**SO ORDERED.**