Carter HOWARD, 95–A–1559, Plaintiff,

v.

Frank HEADLY, Superintendent; Correction Officer Daniel Crum; Kay Fiegl–Bock, Senior Chairperson of the Program Committee, Defendants.

No. 98–CV–2528 (FB).

United States District Court,
E.D. New York.

Oct. 25, 1999.

Carter Howard, Attica Correctional Facility, Attica, NY, pro se.

Eliot Spitzer, Attorney General of the State of New York, New York City, for the Defendants; by Garvin V. Smith, Associate Attorney General.

### MEMORANDUM AND ORDER

BLOCK, District Judge.

Plaintiff Carter Howard ("Howard"), an inmate in a New York State correctional facility, brings this civil rights action *pro se* pursuant to 42 U.S.C. §§ 1983 and 1985, alleging that prison officials who required him to work beyond his physical capabilities violated his First, Eighth and Fourteenth Amendment rights. He seeks damages and injunctive relief. Defendants Frank Headly ("Headly"), Daniel Crum ("Crum"), and Kay Fiegl–Bock ("Fiegl–Bock") are employees of the New York State Department of Corrections ("DOC"). They move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint for failure to state a claim, and on qualified immunity grounds. For the reasons stated below, the Court denies the motion.

### BACKGROUND

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court's task is " 'necessarily a limited one.' " *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College,* 128 F.3d 59, 62 (2d Cir.1997) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). "[I]n ruling on [the] defendant[s'] motion, the court must accept as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff." *Id.* at 63. In addition, because Howard is a *pro se* plaintiff, his pleadings must be read liberally. *See Gomez v. USAA Fed. Savings Bank,* 171 F.3d 794, 795 (2d Cir.1999); *see also Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). The Court should grant such a motion only if, after viewing the plaintiff's allegations in the most favorable light, it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Harris v. City of New York,* 186 F.3d 243, 247 (2d Cir.1999).

Accordingly, the following facts are drawn from Howard's complaint, and are accepted as true for the purposes of this motion: In 1997, Howard suffered back injuries while he was incarcerated in the Arthur Kill Correctional Facility ("Arthur Kill"), operated by DOC in Staten Island, New York. According to his doctor, Howard's resulting back condition, including sciatica, prevented him from doing strenuous work. In January 1998, Howard was assigned by the program committee, of which Fiegl–Bock was the chairperson, to serve as a sanitation worker in the prison. Howard told Fiegl–Bock of his medical condition, and she advised him that she would change his assignment if he provided the committee with medical documentation.

On January 12, 1998, Howard began his assignment, which was supervised by Crum, a correctional officer. The following day, Howard obtained a doctor's note indicating that he had a medical restriction which limited him to performing light duty tasks. He gave Crum a copy of the note, but Crum required Howard to continue working. While on sanitation duty, he was "forced to perform strenuous work tasks every day in pain and agony." Complaint, Facts, ¶ 5. This work aggravated Howard's

medical conditions, made it "very painful for him to walk," and "caused pain in his left arm." Complaint, Exhibit C. Howard complained about the assignment and working conditions to the Arthur Kill grievance committee, which considered inmates' complaints about prison conditions. The grievance committee recommended that he appear before the program committee for reassignment. The complaint does not state whether this appearance occurred, but, in any event, his work assignment was not changed.

On February 5, 1998, Howard injured his neck, right hand and left shoulder, and reinjured his back while working on the sanitation crew. He was sent to the hospital, and ordered by his doctor to use a sling and to take two weeks bed rest. On February 6, 1998, February 20, 1998, and March 23, 1998, Howard's doctor issued him "no-work" medical restrictions. Although Howard presented these restrictions to Crum and Fiegl–Bock, they required him to continue in the sanitation program. Crum told him that he was "faking" and that he "didn't want to hear it" when Howard told him about his medical restrictions. Complaint, ¶ IV, 1, Facts, ¶ 5. On various days, Howard did not appear for sanitation duty because he did not wish to perform the painful work.

In mid-March 1998, Crum issued Howard several misbehavior reports related to his failure to participate in the work program, many of which were later dismissed by a hearing officer who determined that Howard was not required to perform the sanitation work because of his medical restrictions. On March 27, 1998, Howard filed with the DOC Inspector General a complaint about his work assignment and misbehavior reports.

That same day, Crum issued Howard another misbehavior notice, which was endorsed by Fiegl–Bock. Howard alleges that Crum and Fiegl–Bock issued the misbehavior notices in retaliation for his complaints to them, the grievance committee, and the Inspector General. According to

Howard, Headly—the Arthur Kill Superintendent—failed "to remedy an egregious wrong after learning of the violations and unlawful conduct of his subordinates." Complaint, ¶ IV–A, 3.

At some point, Howard also submitted to the Arthur Kill grievance committee a grievance against Crum alleging retaliation and harassment based on the same facts alleged in the present complaint. At the time the complaint was filed, this grievance was still pending. Howard does not indicate whether he filed grievances against Fiegl–Bock or Headly.

The defendants move to dismiss the complaint in its entirety. However, in their memorandum of law, they address only the Eighth Amendment claims, and not the claims based on their alleged retaliation against Howard, claiming that: 1) the complaint alleges insufficient facts to set forth a violation of Howard's Eighth Amendment constitutional rights with regard to his work assignments; 2) defendants are entitled to qualified immunity with regard to the Eighth Amendment claim; and 3) the complaint fails to allege that Headly was personally involved in the alleged violations. Accordingly, the retaliation claim will not be considered a part of this motion.

## DISCUSSION

### I. Subject Matter Jurisdiction

█ Howard's complaint describes his efforts to avail himself of the grievance procedures which were available at Arthur Kill and through statewide DOC offices, such as the Office of the Inspector General. Howard does not, however, describe the remedies available to him, or whether he pursued those remedies to their full extent. The presence in the complaint of issues regarding administrative exhaustion are indicia of circumstances that raise concerns about the Court's subject matter jurisdiction. Because federal courts are under an independent obligation to examine their own jurisdiction, see *FW/PBS,*

*Inc. v. City of Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990), the Court must *sua sponte* explore allegations that relate to its subject matter jurisdiction, *see Presidential Gardens Assocs. v. United States,* 175 F.3d 132, 140 (2d Cir. 1999) (an argument that subject matter jurisdiction is lacking may be raised at any time, by any party, or *sua sponte* by the court).

■ The language of the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), suggests that the statute may restrict the federal courts' jurisdiction. The statute states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). If the statute were jurisdictional, the Court would have a duty to examine whether Howard has complied with the statute before deciding the motion to dismiss, and would likely hold a hearing to determine if Howard had met his burden of establishing subject matter jurisdiction. *See In re United States Catholic Conference,* 824 F.2d 156, 162 (2d Cir. 1987), *rev'd on other grounds,* 487 U.S. 72, 108 S.Ct. 2268, 101 L.Ed.2d 69 (1988) (court may conduct whatever proceedings are appropriate to determine whether it has jurisdiction); *Kamen v. American Telephone & Telegraph Co.,* 791 F.2d 1006, 1011 (2d Cir.1986) (same); *Guadagno v.*

*Wallack Ader Levithan Assoc.,* 932 F.Supp. 94, 95 (S.D.N.Y.1996) (same).

The Second Circuit has not yet considered the jurisdictional implications of 42 U.S.C. § 1997e(a). However, the circuit courts that have addressed the issue—the Fifth, Sixth, Seventh and Ninth Circuits—have held that the administrative exhaustion provision of 42 U.S.C. § 1997e(a) is not a jurisdictional requirement.[1] *See Rumbles v. Hill,* 182 F.3d 1064, 1067–68 (9th Cir.1999); *Perez v. Wisconsin Dep't of Corrections,* 182 F.3d 532, 535–36 (7th Cir. 1999); *Underwood v. Wilson,* 151 F.3d 292, 294 (5th Cir.1998), *cert. denied,* 522 U.S. 906, 119 S.Ct. 1809, 143 L.Ed.2d 1012 (1999); *Wright v. Morris,* 111 F.3d 414, 421 (6th Cir.), *cert. denied,* 522 U.S. 906, 118 S.Ct. 263, 139 L.Ed.2d 190 (1997).[2]

In *Underwood,* the Fifth Circuit provided the best-expressed rationale for holding that 42 U.S.C. § 1997(e)(a) does not impose any jurisdictional limitations. The court explained that "[a] statute requiring exhaustion of administrative remedies may be jurisdictional if it is 'more than a codified requirement of administrative exhaustion' and contains 'sweeping and direct' statutory language that goes beyond a requirement that only exhausted actions be brought." *Underwood,* 151 F.3d at 294 (quoting *Weinberger v. Salfi,* 422 U.S. 749, 757, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)). After analyzing statutory schemes which had been held to impose a jurisdictional exhaustion requirement, the court conclud-

---

**1.** Additionally, in unpublished decisions, the Tenth Circuit has held that the PLRA does not impose a jurisdictional requirement. *See Basham v. Uphoff,* No. 98–8013, 1998 WL 847689, at *3 (10th Cir. Dec.8, 1998); *Dickey v. Kennard,* 156 F.3d 1243, 1998 WL 568026 (10th Cir. Sept.2, 1998).

**2.** The district courts have split on the issue, although the majority of the decisions have held that the requirement is not jurisdictional. *See Cooper v. Garcia,* 55 F.Supp.2d 1090, 1093–94 (S.D.Cal.1999); *Smith v. Stubblefield,* 30 F.Supp.2d 1168, 1170 (E.D.Mo. 1998); *Harris v. Mugarrab,* 1998 WL 246450, at *2 (N.D.Ill. May 1, 1998); *Lacey v.C.S.P. Solano Medical Staff,* 990 F.Supp. 1199,

1201–07 (E.D.Ca.1997); *Palomino v. Stanton,* 1997 WL 350099, at *2 (N.D. Cal. June 17, 1997). Those that have held that 42 U.S.C. § 1997e(a) imposes a jurisdictional requirement have done so summarily based on the face of the statute and have not provided extensive analysis. *See Cheirs v. Postell,* 1999 WL 681501, at *1–*2 (N.D.Ohio Aug.26, 1999); *Navarrete v. MDC,* 1999 WL 294785 (E.D.N.Y. Mar.19, 1999); *Gibbs v. Bureau of Prison Office, FCI,* 986 F.Supp. 941, 943–44 (D.Md.1997); *Hernandez v. Browman,* 1997 WL 383155, at *1 (N.D.Cal. July 1, 1997); *Morgan v. Arizona Dep't of Corrections,* 976 F.Supp. 892, 895 (D.Ariz.1997).

ed that § 1997e(a), in contrast, contained "precisely the type of language held in *Weinberger v. Salfi* not to limit federal jurisdiction." *Underwood,* 151 F.3d at 294; *see Wright,* 111 F.3d at 420–21.

The Fifth Circuit also found support for its conclusion in 42 U.S.C. § 1997e(c)(1) and (2), which require a district court to screen prisoner complaints and dismiss those that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant immune from such relief. *See* 42 U.S.C. § 1997e(c)(1). That statute provides that a court may dismiss claims of these sorts without requiring the plaintiff to exhaust administrative remedies. *See* 42 U.S.C. § 1997e(c)(2). The Fifth Circuit concluded that a district court "would not be empowered to do so if the exhaustion provision deprived the court of jurisdiction over the action." *Underwood,* 151 F.3d at 295 (citation omitted).

It is assumed that the Second Circuit will concur, as the Court does, with the well-reasoned analysis of *Underwood,* and hold, as have all those circuit courts which have considered the issue, that the statute does not preclude subject matter jurisdiction. The Court, therefore, will proceed to address the defendants' motion to dismiss.[3]

## II. Failure to State an Eighth Amendment Claim

■ The Eighth Amendment protects prisoners from "cruel and unusual punishment" in the form of "unnecessary and wanton infliction of pain" at the hands of prison officials. *Wilson v. Seiter,* 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Estelle v. Gamble,* 429 U.S. 97, 104,

97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Eighth Amendment's prohibition against cruel and unusual punishment includes an inmate's right to be free from conditions of confinement that impose "an excessive risk to [the] inmate['s] health or safety . . . ." *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *see Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994). To establish an Eighth Amendment claim based on unsafe working conditions, a plaintiff must establish that 1) he was incarcerated under conditions which posed a serious risk of serious harm, and 2) prison officials acted with deliberate indifference to his health or safety. *See Farmer,* 511 U.S. at 834, 114 S.Ct. 1970. Howard's claim may be analogized to a claim for inadequate medical care, which also requires proof of deliberate indifference. *See Gill v. Mooney,* 824 F.2d 192, 194 (2d Cir.1987) (prisoner alleged Eighth Amendment claim when he alleged that prison guards deliberately ignored doctor's order that prisoner pursue exercise in prison gym).

■ "The deliberate indifference standard embodies both an objective and a subjective prong." *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994); *see Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998). Under the objective standard, a plaintiff must allege a deprivation "sufficiently serious" to constitute a constitutional violation. *Hathaway,* 37 F.3d at 66 (quoting *Wilson,* 501 U.S. at 298, 111 S.Ct. 2321). A plaintiff may satisfy the objective prong by alleging that his prison work duties created a serious risk of seri-

---

**3.** The Court notes that the defendants have not moved to dismiss based on exhaustion grounds. *See, e.g., Cruz v. Jordan,* 98–CV–0363, 1999 WL 557519, at *3–*13, —— F.Supp.2d ——, —————— (S.D.N.Y.1999) (discussing dimensions of § 1997(e)(a)). If the defendants make such a motion, the Court may then be required to decide whether Howard must plead administrative exhaustion in order to survive a motion to dismiss for failure to state a claim, *see, e.g., Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 398, 102

S.Ct. 1127, 71 L.Ed.2d 234 (1982) (administrative exhaustion is a condition precedent to a Title VII claim); *Babrocky v. Jewel Food Co. & Retail Meatcutters,* 773 F.2d 857, 864 (7th Cir.1985) (same), or whether administrative exhaustion is an affirmative defense that is waived by the defendants' failure to raise the issue in their initial moving papers, *see Perez,* 182 F.3d at 536 ("Defendants may waive or forfeit reliance on § 1997(e), just as they may waive or forfeit the benefit of a statute of limitations.").

ous injury. *Cf. Jackson v. Cain,* 864 F.2d 1235, 1246 (5th Cir.1989) (prisoner properly alleged an Eighth Amendment claim when he claimed that his work detail assignment seriously aggravated his serious physical condition); *Baumann v. Walsh,* 36 F.Supp.2d 508, 513 (N.D.N.Y.1999) (prisoner alleged Eighth Amendment claim when he alleged that he had been required to climb along top shelf of storage room); *Thomas v. Coombe,* 95–CV–10342, 1998 WL 20000, at *2 (S.D.N.Y. Jan. 20, 1998) (prisoner set forth Eighth Amendment claim when she alleged that she had been required to perform heavy kitchen work in contravention of doctor's orders); *but see Wilson v. Johnson,* 999 F.Supp. 394, 399 (W.D.N.Y.1998) (granting summary judgment to defendants when prisoner's medical records did not show "his back problem was serious enough to prevent him from performing the tasks required of [his position as] a mess hall worker").

■ The subjective component of the Eighth Amendment claim goes to the defendants' "culpable state of mind." *Hathaway,* 37 F.3d at 66. As explained by the Court of Appeals, "[d]eliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm . . . ." *Id.* (citing *Farmer,* 511 U.S. at 835, 114 S.Ct. 1970). In order for a prison official to act with deliberate indifference, he must know of and disregard an excessive risk to an inmate's health or safety. *Id.* The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.* (citation omitted).

■ Furthermore, in order to establish personal liability against a government official for a constitutional violation, a plaintiff must show that "the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Accordingly, the personal involvement of a defendant in the alleged constitutional deprivation is a prerequisite to an award of damages under § 1983. *See Snider v. Dylag,* No. 98–CV–2271, 188 F.3d 51, 1999 WL 635618 (2d Cir. Aug. 23, 1999); *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986). A defendant's personal involvement may be established by demonstrating that the defendant directly participated in an event, learned of the egregious wrong and failed to correct it, created or allowed a policy to exist that harmed the plaintiff, or acted with deliberate indifference or gross negligence in managing subordinates. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994); *Williams,* 781 F.2d at 323.

■ By any fair reading of Howard's complaint he has satisfied the objective component of deliberate indifference by alleging that prison officials exposed him to a serious risk of serious injury. Howard alleges that because of his sciatica and injuries to his back and neck, he could not safely perform sanitation duties, and that when he was required to do so, he suffered pain and agony. Howard also alleges that he was injured on two different occasions while on sanitation duty, and that the prison physician had repeatedly ordered that he was not to be required to perform such work. Under these circumstances, if proven to be true, the sanitation duty was dangerous for Howard to perform.

As to the subjective component of deliberate indifference, Howard alleges that Crum and Fiegl–Bock had prior knowledge of his medical condition, that he advised them that he was medically unable to do such work, and that he showed them doctor's notes to support his claim. He specifically alleges that Crum told him that he was faking his disability, and that he did not care about his work limitations. Howard also alleges that defendant Headly was advised of Howard's circumstances but did not remedy the improper conduct of Crum and Fiegl–Bock. Certainly, such facts can demonstrate defendants' deliberate indifference to Howard's condition.

The Court concludes that Howard has stated facts from which a finder of fact could infer the requisite scienter. *See Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir.1996) (denying motion to dismiss for failure to state a claim when prisoner alleged that he had produced to prison officers documentation of his special medical needs).

Accordingly, Howard alleges sufficient facts which, if proven true, would establish an Eighth Amendment claim. He also alleges that Headly acted with deliberate indifference when supervising Crum and Fiegl–Bock, and failed to correct Howard's problem even when he learned about it, which, if true, could serve to hold Headly personally liable. *See Wright*, 21 F.3d at 501. The motion to dismiss for failure to state an Eighth Amendment claim is denied.

### III. Qualified Immunity

■■■■ The State argues that the defendants are entitled to qualified immunity. "Qualified immunity shields officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Connell v. Signoracci*, 153 F.3d 74, 79 (2d Cir.1998) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "A right is clearly established when '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right .... [T]he unlawfulness must be apparent.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). When determining whether a right is clearly established, a district court should look to Supreme Court and Second Circuit precedent. *See Young v. County of Fulton*, 160 F.3d 899, 903 (2d Cir.1998).

■■■■ The right to be free from cruel and unusual punishment—and more specifically, the right to work in a safe workplace—was "clearly established" at the time of the events alleged in the complaint. For example, in *Gill v. Mooney*, 824 F.2d 192 (2d Cir.1987), a case decided more than a decade before the incidents at issue in Howard's complaint, the plaintiff, a state prisoner, fell off a ladder and injured his back while working in a state shop. The inmate claimed that a corrections officer had ordered him to continue working on the ladder after he informed the officer that it was unsafe. The Second Circuit held that the plaintiff had demonstrated deliberate indifference because his allegations, when liberally construed, "involve[d] more than ordinary lack of due care for the prisoner's interests or safety." *Id.* at 195 (quoting *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)).

■■■■ "Even where a right is clearly established, an official is entitled to qualified immunity nevertheless if 'it was objectively reasonable for the public official to believe that his acts did not violate th[at] right[ ].'" *Connell*, 153 F.3d at 79 (quoting *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir.1991)). Defendants do not offer any explanation as to why it would have been objectively reasonable for them to believe that their acts did not violate Howard's right to safe working conditions. The Court cannot fathom, in the context of this 12(b)(6) motion, how the defendants' actions were objectively reasonable in light of the repeated, explicit notice Howard allegedly provided to them regarding his medical inability to perform his sanitation duties. Accordingly, the defendants are not entitled to qualified immunity at this stage of the proceedings.

### CONCLUSION

Therefore, the Court denies the defendants' motion to dismiss.

**SO ORDERED.**