153 F.3d 74
 Robert S. CONNELL; Valerie Ann LaPointe, Plaintiffs-Appellees,
v.
Robert SIGNORACCI, Mayor and Commissioner of Public Safety
of the City of Cohoes; Frank Valenti, Chief Investigator
for the District Attorney, Albany County; Raymond William
Heslin, Chief of Police, Police Department, City of Cohoes;
Stephen Carmel, Building Code Enforcement Officer, City of
Cohoes; James Ward, Detective Lieutenant, Police
Department, City of Cohoes; Patrick Abrams, Captain, Police
Department, City of Cohoes, each individually and in their
official capacity, Defendants-Appellants,
John Stackrow, Commissioner, Department of Public Works,
City of Cohoes; City of Cohoes, New York; City of Cohoes
Police Department; Keith J. Champagne, Director of Code
Enforcement, City of Troy, each individually and in their
official capacity, Defendants.
 Nos. 96-7955(L), 96-9125 and 96-9455.
 United States Court of Appeals,
Second Circuit.
 Argued Aug. 28, 1997.
Decided Aug. 21, 1998.
 
 Lewis B. Oliver, Jr., Albany, NY (Mark A. Edwards, Oliver & Oliver, on the brief), for Plaintiffs-Appellees.
 Daniel J. Stewart, Albany, NY (Dreyer Boyajian LLP, on the brief), for Defendants-Appellants Signoracci, Heslin, Carmel, Ward, and Abrams.
 Arete Sprio, Albany, NY (Maynard, O'Connor, Smith Catalinotto & D'Agostino, LLP, on the brief), for Defendant-Appellant Valenti.
 Before: MESKILL and JACOBS, Circuit Judges, and KORMAN, District Judge.*
 JACOBS, Circuit Judge:
 
 
 1
 Plaintiffs-appellees Robert Connell and Valerie LaPointe were (respectively) the landlord and the owner-operator of two topless dancing bars located in the neighboring towns of Cohoes and Troy, New York. They allege that the defendants-appellants--the mayor of Cohoes, municipal officials of Cohoes and Troy, and an investigator for the Albany County District Attorney's office--violated 42 U.S.C. § 1983 by infringing (and by conspiring to infringe) plaintiffs' rights under the First and Fourteenth Amendments. Mayor Robert Signoracci and the other remaining individual defendants appeal from two orders of the United States District Court for the Northern District of New York (McAvoy, Ch. J.), (i) denying their motion to dismiss this action on the ground of qualified immunity, and (ii) denying their motion for reconsideration of that decision.
 
 
 2
 Before discovery commenced, the defendants moved to dismiss the action pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. The district court granted the motion in part, but held that claims were stated for retaliation based on plaintiffs' exercise of their First Amendment rights. The court denied the defendants' motions to dismiss on the basis of qualified immunity.
 
 
 3
 We reverse as to Connell's claims, affirm as to LaPointe's claims, and remand.
 
 
 4
 It cannot be said to be objectively reasonable that persons in defendants' official positions would have believed that a supposed campaign of harassment against LaPointe's topless business would chill Connell's expression, because as a policeman he was barred from having an interest in a bar and therefore had no right to operate or present the topless entertainment that in this case passes for First Amendment expression. The complaint does not plead otherwise, and in fact expressly disclaims any involvement by him in the bars or in the expressive activity of topless dancers he denies employing. Defendants are therefore entitled to qualified immunity as to all of Robert Connell's claims.
 
 
 5
 As to LaPointe's claims, we cannot resolve the qualified immunity issues because the prolix and unintelligible allegations of the complaint frustrate the preliminary consideration of immunity to which the defendants are entitled, and we therefore remand for further proceedings as to those claims.
 
 BACKGROUND
 
 6
 Robert Connell was a police officer of the City of Cohoes, who left the force in April 1994 as a result of a back injury. While he was still a police officer and during the events giving rise to this action, Connell owned two parcels of commercial property, one in Cohoes and the other in neighboring Troy. He rented them to his paramour Valerie LaPointe, who owned and operated bars there. In May 1993, LaPointe's bars began to offer topless dancing. This entertainment was and remains permissible under state and local law. LaPointe closed the Troy bar on or about April 20, 1994, and the Cohoes bar on August 8, 1994.
 
 
 7
 Connell and LaPointe allege that Mayor Signoracci of Cohoes and the other defendant officials are hostile to topless entertainment; that they engaged in harassment to discourage patronage of the bars and retaliate against Connell and LaPointe; and that they succeeded in depressing revenues, in forcing LaPointe to close her businesses, and in depriving Connell of rent proceeds. After sifting the verbiage of the complaint, the district court usefully identified four incidents of allegedly harassing conduct in a bench ruling on May 13, 1996.
 
 A. The Four Incidents of Alleged Harassment
 
 8
 1. The License Investigation. Section 128 of the New York State Alcoholic Beverage Control Law, and the regulations of the Cohoes Police Department, prohibit a police officer from being "either directly or indirectly interested in the manufacture or sale of alcoholic beverages." See N.Y. Al. Bev. Con. L. § 128 (McKinney's 1987). This provision prohibits officers from having an interest in the ownership or operation of any establishment that has a liquor license. See Wilson v. New York State Liquor Authority, 52 N.Y.2d 741, 436 N.Y.S.2d 275, 275, 417 N.E.2d 569, 569 (1980) (mem.). "[T]he obvious purpose of the prohibition is to avoid conflicts of interest with a police officer's duty to enforce the Alcoholic Beverage Control Law, and to preserve public confidence in the police." Rotunno v. City of Rochester, 120 A.D.2d 160, 161, 507 N.Y.S.2d 924, 925 (4th Dep't 1986), aff'd, 71 N.Y.2d 995, 529 N.Y.S.2d 275, 524 N.E.2d 876 (1988).
 
 
 9
 Acting on information that Connell was violating this provision, the defendants conducted an internal investigation in June 1993. Connell maintains that he never had an ownership interest in the bars and that they were owned and operated by LaPointe. The complaint alleges that Cohoes officials sought affidavits from LaPointe's employees and offered one of them leniency on drunk driving charges in exchange for incriminating information about Connell. No criminal charges arising from this investigation were filed against Connell.
 
 
 10
 2. The enforcement of the signage ordinance. In May 1993, LaPointe gave a new name ("Sensations") to the part of the Cohoes bar in which the topless dancers were performing. She repainted the exterior sign in bright colors and added a painting of a fan dancer. The bar sits in the Cohoes Historic District, and its appearance and signage are subject to special regulation. Defendant Stephen Carmel, the Cohoes building code enforcement officer, wrote to LaPointe that the repainted sign violated two Code provisions. According to Carmel, the plaintiffs were required to obtain a permit for a new sign, and to submit color drawings of proposed designs to the Planning Board. LaPointe refused to obtain a permit, asserting that the Code provision did not govern the repainting of an existing sign. Carmel issued appearance tickets to both of the plaintiffs. The sign remained.
 
 
 11
 The complaint alleges that the sign had been repainted on prior occasions without objection, that the ordinance had never been enforced against any other business for the repair, maintenance or alteration of an existing sign, that the ordinance was enforced in 1993 to harass Connell and LaPointe and injure their business, and that the neighbor's complaint cited in Carmel's letter was a pretext. Local newspapers reported the incident; and plaintiffs allege that Mayor Signoracci claimed "official credit for this action."
 
 
 12
 3. The awning theft investigation. The complaint alleges that in 1993, Mayor Signoracci instigated a probe of Connell for the alleged theft of an awning that had been removed from an abandoned building and installed at LaPointe's bar. Signoracci and Police Chief Heslin turned the investigation over to the Albany County District Attorney, who assigned to it his Chief Investigator, defendant Valenti. Valenti was assisted by defendants Ward and Abrams, Cohoes police officers. They placed a body microphone on an individual named Mike Morrow and monitored his conversations with Connell. Connell was indicted on charges of grand larceny and official misconduct in November 1993. The grand larceny charge was ultimately adjourned in contemplation of dismissal, and the official misconduct charge was dismissed.
 
 
 13
 The complaint alleges that the investigation was prompted by a falsehood told by a disgruntled former employee of LaPointe; that defendant Valenti coerced Morrow to wear the body microphone and then to lie to the grand jury; and that Signoracci and the other defendants conspired with the district attorney's office to trump up the charges for the sole purpose of threatening and harassing Connell.
 
 
 14
 4. The campaign against topless bars. According to the complaint, Mayor Signoracci made frequent public statements beginning in May 1993, denouncing topless bars and their owners; expressed a desire to do everything he could to eliminate topless dancing and similar entertainment in Cohoes; blamed both LaPointe and Connell for the topless dancing; and accused Connell of maintaining a financial interest in the establishments in violation of state and local law. Signoracci publicly conceded that the plaintiffs had a First Amendment right to offer topless entertainment and that this entertainment was legal under state law, and voiced his view that, nonetheless, "[t]hey don't belong 1 1/2 blocks away from two churches, the police station, City Hall and in a local Historic District."
 
 
 15
 In November 1993, the Mayor sponsored a public rally with the American Family Association to observe Pornography Awareness Week half a block from Sensations. At the rally, the Mayor denounced topless bars, and implied that Connell was violating state law and Cohoes Police Department policy by his involvement in their operation. On another occasion, he took members of the Association to the Troy bar; the complaint alleges that the field trip was conducted to arouse public opinion, obtain political advantage, and injure the plaintiffs. The Mayor's statements and actions taken as a whole are alleged to constitute threats that actually impaired the plaintiffs' businesses and chilled the exercise of their First Amendment rights.
 
 
 16
 In June or July 1993, defendant Heslin, the Cohoes Police Chief, installed a surveillance camera at the police stationhouse, a block away from Sensations. The plaintiffs allege that Heslin's purpose was to spy on LaPointe's patrons, and that Heslin publicized the fact that the camera would be trained on the bar in order to deter Cohoes citizens from going there.
 
 B. The District Court's Bench Ruling
 
 17
 The 89-page complaint, accurately described by the district court as "profoundly equivocal and repetitive," invokes 42 U.S.C. § 1983 to plead violations of plaintiffs' rights under the First and Fourteenth Amendments. The defendants immediately moved to dismiss the action on the grounds of failure to state a claim and qualified immunity. Judge McAvoy decided this motion from the bench on May 13, 1996.
 
 
 18
 1. Failure to state a claim. The court accurately and painstakingly grouped the allegations into describable claims, and dealt with them as follows.
 
 
 19
 The court reviewed the claims labeled "retaliatory prosecution" in the complaint, treated them as claims for malicious prosecution, and dismissed them for failure to allege a necessary element. The district court also dismissed allegations that the defendants had engaged in selective prosecution, as well as the plaintiffs' conspiracy claim.
 
 
 20
 The district court found that some of statements and conduct attributed to the defendants could be interpreted as threats to retaliate against plaintiffs and their patrons for engaging in protected expressive activity, and held that the plaintiffs had stated a claim for violation of the First Amendment. Moreover, the court found that plaintiffs had stated a claim for municipal liability under 42 U.S.C. § 1983 and Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).
 
 
 21
 Judge McAvoy's dismissal of claims is beyond the scope of review on this appeal; he did not direct the entry of a final judgment as to those claims, and plaintiffs have not appealed the dismissal of those claims. See Fed R. Civ. P. 54(b); Robert Stigwood Group Ltd. v. Hurwitz, 462 F.2d 910, 913 (2d Cir.1972). We therefore focus exclusively on the disposition of defendants' claim of qualified immunity.
 
 
 22
 2. Qualified immunity. The court denied the defendants' joint motion for qualified immunity on the ground that the plaintiffs had not yet had an opportunity to conduct discovery. On October 4, 1996, Judge McAvoy denied the defendants' motion for reconsideration on all issues. The defendants appealed from both these orders.[1]
 
 DISCUSSION
 
 23
 Under 42 U.S.C. § 1983, a government official who subjects an individual to "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" is civilly liable to that person. 42 U.S.C. § 1983 (1984). The only claims against individual officials that have not been dismissed are those that allege government conduct in retaliation for plaintiffs' exercise of free speech. A plaintiff asserting such a First Amendment claim must allege that (i) he has an interest protected by the First Amendment, Easton v. Sundram, 947 F.2d 1011, 1015 (2d Cir.1991), cert. denied, 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992); (ii) the defendant's actions were motivated by or substantially caused by the plaintiff's exercise of that right, id.; and (iii) the defendant's action effectively chilled the exercise of the plaintiff's First Amendment rights. Singer v. Fulton County Sheriff, 63 F.3d 110, 120 (2d Cir.1995), cert. denied, 517 U.S. 1189, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996). Here, the plaintiffs allege that (i) LaPointe had a First Amendment interest in promoting topless dancing; (ii) the defendants' actions were impermissibly motivated by the desire to stop her from promoting topless dancing; and (iii) the defendants' actions hurt her business, chilling their exercise of First Amendment rights. The only question before us is whether the district court erred in deciding not to dismiss the § 1983 claims against the individual officials on qualified immunity grounds.
 
 
 24
 The qualified immunity doctrine protects government officials from suits seeking to impose personal liability for money damages based on unsettled rights or on conduct that was not objectively unreasonable, and reduces "the general costs of subjecting officials to the risks of trial--distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) (internal quotation marks and citation omitted). These goals are thwarted when a person who enjoys qualified immunity is compelled unnecessarily to submit to discovery or proceed to trial, because qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Id.; see also P.C. v. McLaughlin, 913 F.2d 1033, 1039 (2d Cir.1990) (noting that "the doctrine provides immunity from suit that will effectively be lost if a case is erroneously permitted to go to trial"). Therefore, "[a]n order denying a motion to dismiss on the ground of qualified immunity is immediately appealable where the district court has rejected that defense as a matter of law." Kaluczky v. City of White Plains, 57 F.3d 202, 206 (2d Cir.1995). See also Mitchell, 472 U.S. at 530, 105 S.Ct. at 2817 (holding that a district court's denial of a claim of qualified immunity is an appealable "final decision" under 28 U.S.C. § 1291, so long as it turns on an issue of law).
 
 
 25
 On appeal from the district court's disposition of a motion to dismiss pursuant to Rule 12(b)(6), we accept as true the factual allegations of the complaint and we read it liberally, drawing all reasonable inferences in favor of the plaintiff. PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1197-98 (2d Cir.1996). We review de novo a district court's denial of a motion to dismiss on qualified immunity grounds. See Jemmott v. Coughlin, 85 F.3d 61, 66 (2d Cir.1996) (finding that district court's analysis of whether facts alleged in plaintiff's complaint, accepted as true, fail to state a claim of violation of clearly established law presents a purely legal question for appellate court review). See also, e.g., Jenkins v. Medford, 119 F.3d 1156, 1159 (4th Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 881, 139 L.Ed.2d 869 (1998); Milazzo v. O'Connell, 108 F.3d 129, 131 (7th Cir.1997).
 
 
 26
 A defendant is entitled to qualified immunity on a motion to dismiss if the allegations of the complaint fail to "state a claim of violation of clearly established law." Behrens v. Pelletier, 516 U.S. 299, 306, 116 S.Ct. 834, 839, 133 L.Ed.2d 773 (1996) (internal quotation marks omitted) (quoting Mitchell, 472 U.S. at 526, 105 S.Ct. at 2815). Qualified immunity shields officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). A right is clearly established when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.... [T]he unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Even where a right is clearly established, an official is entitled to qualified immunity nevertheless if "it was objectively reasonable for the public official to believe that his acts did not violate th[at] right[ ]." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir.1991).
 
 
 27
 The Supreme Court has expressed the preference that in evaluating a qualified immunity defense, we "determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question." County of Sacramento v. Lewis, --- U.S. ----, 118 S.Ct. 1708, 1714 n. 5, 140 L.Ed.2d 1043 (1998). Topless dancing is "expressive conduct within the outer perimeters of the First Amendment, though ... only marginally so." See Barnes v. Glen Theatre, Inc., 501 U.S. 560, 566, 111 S.Ct. 2456, 2460, 115 L.Ed.2d 504 (1991). See also DLS, Inc. v. City of Chattanooga, 107 F.3d 403, 409 (6th Cir.1997); D.G. Restaurant Corp. v. City of Myrtle Beach, 953 F.2d 140, 145 (4th Cir.1992). At least at this early stage, the plaintiffs are entitled to the benefit of every favorable inference on this question, so we assume that the right allegedly at issue is clearly established. For the reason set forth below, however, the officials cannot be said to have invaded Connell's clearly established rights under the First Amendment.
 
 A. Connell
 
 28
 As a police officer, Connell was legally barred by state and local laws (the validity of which he does not contest) from having any interest in the ownership or operation of a tavern. The Complaint affirmatively alleges that Connell and LaPointe "maintained strict separation of their respective interests as landlord and bar owner," Complaint p 64, and that this "landlord-tenant relationship had been set up by [their] attorney specifically to comply with the Alcoholic Beverage Control Law." Complaint p 263.
 
 
 29
 Connell's affirmative disavowal of any financial interest or management role in LaPointe's bars means that the entertainment there cannot be characterized as self-expression by Connell. Accordingly, Connell has failed to allege a deprivation of any clearly established First Amendment right that he was exercising. That is the first ground for granting defendants' qualified immunity motion with respect to Connell's claims.
 
 
 30
 In addition, it was objectively reasonable for the defendants to believe that their conduct did not violate Connell's First Amendment rights. The complaint alleges that "the City and all the defendants [knew] for some time that Connell did not own or operate the bar itself; that Connell merely owned the building; and that the bar was and is owned and operated by Ms. LaPointe," Complaint p 99. That is the second ground for granting defendants qualified immunity with respect to Connell's claims.
 
 
 31
 One of the claims in the complaint is that the defendants' investigation of Connell's financial and management role in the bars was (i) "groundless" and (ii) "malicious[ ]." See, e.g., Complaint pp 89, 125. One necessary premise of that claim is that Connell played no role in running the bars; otherwise the investigation would have constituted a legitimate effort to enforce the Alcoholic Beverage Control Law and would not have been "groundless." A second necessary premise is that the defendants knew that Connell had no financial or management role is the bars; otherwise Connell could not allege that the investigation was "malicious."
 
 
 32
 Connell cannot have it both ways, dissociating himself from LaPointe's business and claiming at the same time that the topless dancing in LaPointe's bars was a First Amendment right that he was exercising. We need not decide whether a landlord exercises First Amendment rights in making premises available for expression that the landlord favors. Connell's pleading forecloses that argument. Nor may we decide on this appeal whether a landlord who is subjected to government harassment by reason of a tenant's expressive activities may have a due process or equal protection claim, or some other constitutional claim. No such claims are before us. We do hold that because the pleadings show that Connell was not engaging in expression, Connell cannot have a First Amendment claim--the only type of claim not already dismissed by the district court in this case. Consequently, all of the individual defendants are entitled to qualified immunity as to Connell's sole remaining claim against them--his claim that they retaliated against him for the exercise of his First Amendment rights.
 
 B. LaPointe
 
 33
 The next question is whether qualified immunity shields any of the defendants from LaPointe's claims.
 
 
 34
 Defendants persuasively argue that they are entitled to qualified immunity as to claims based upon the installation of a surveillance camera at the Cohoes police station. The Supreme Court has upheld findings that purveyors of adult entertainment can create "serious problems" in their communities and that these establishments are associated with higher crime rates, urban blight and other "undesirable secondary effects." City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 49, 53, 106 S.Ct. 925, 930, 932, 89 L.Ed.2d 29 (1986). See also Young v. American Mini Theatres, Inc., 427 U.S. 50, 71 n. 34, 96 S.Ct. 2440, 2453 n. 34, 49 L.Ed.2d 310 (1976) (plurality opinion) (citing legislative finding that "a concentration of 'adult' movie theaters causes [an] area to deteriorate and become a focus of crime"); Stringfellow's Ltd. v. City of New York, 171 Misc.2d 376, 653 N.Y.S.2d 801, 804 (Sup.Ct.N.Y.Co.1996) (discussing New York Department of City Planning study which showed that "the presence of adult entertainment establishments ... tends to produce negative secondary effects such as increased crime, decreased property values, and reduced shopping and commercial activities"), aff'd, 241 A.D.2d 360, 663 N.Y.S.2d 812 (1st Dep't 1997), aff'd, 91 N.Y.2d 382, 671 N.Y.S.2d 406, 694 N.E.2d 407 (1998). As these cases illustrate, municipalities may need to gather information about the environmental effect that places of adult entertainment may have on the community in order to mount a constitutional defense of restrictive zoning measures. Thus, a level of surveillance--such as a camera viewing the outside area in question, monitored at a police station, or a policeman stationed nearby--may well be justified, and is an unlikely basis for a finding of a constitutional violation.
 
 
 35
 Similarly, the defendants strongly argue that most of Mayor Signoracci's statements are protected by the Mayor's own undoubted right under the First Amendment to mobilize public opinion on the subject of topless bars. See Hammerhead Enters., Inc. v. Brezenoff, 707 F.2d 33, 36-37, 39 n. 6 (2d Cir.), cert. denied, 464 U.S. 892, 104 S.Ct. 237, 78 L.Ed.2d 228 (1983). The Mayor is privileged, for example, to organize a rally against pornography, to call the topless bars a "black eye on the community" and a "slimy business," and to call for a boycott of the establishments.
 
 
 36
 At the same time, of course, he is not permitted to threaten or launch government reprisals against LaPointe because she is engaged in expression protected by the First Amendment. However, allegations as to which the Mayor (and various or all the other defendants) are entitled to immunity are jumbled together with allegations of threat and reprisal (against Connell and/or LaPointe, indiscriminately) in the same claims for relief, so that no one can draw the necessary "fine lines between permissible expressions of personal opinion and implied threats to employ coercive state power to stifle protected speech." See id. at 39. The district court believed it was "well within its inherent powers to dismiss the Complaint without prejudice and with leave to replead in compliance with Federal Rule of Civil Procedure 8(a)," but went on to "consider[ ] the complaint in its present form" chiefly because the defendants failed to seek dismissal of the complaint for failure to comply with Rule 8(a).
 
 
 37
 In its present form, however, the complaint does not allow the timely ruling on qualified immunity to which some or all of the defendants may be entitled. The 89-page pleading is an omnium gatherum, obsessively repetitious, overwrought in tone, and organized like a front hall closet. Most of the complaint's factual allegations concern the defendants' treatment of Connell. We cannot tell whether LaPointe claims that pressure was brought to bear upon Connell in his capacity as her landlord or as her paramour, or whether the other allegations are sufficient to state a claim for violation of any clearly established constitutional right. Unable to do anything else, we affirm the district court's denial of qualified immunity as to LaPointe's claims.
 
 
 38
 The district court may now, at its discretion, require LaPointe to replead the complaint in a way that would organize the issues enough to allow dismissal of some or all of their claims on qualified immunity grounds. Alternatively or in addition, the court may allow some discovery as to several or all of the claims. In any event, the qualified immunity argument may be presented again. See Behrens, 516 U.S. at 306, 116 S.Ct. at 839.
 
 CONCLUSION
 
 39
 The judgment of the district court, denying the defendants' motion to dismiss on the ground of qualified immunity, is affirmed in part and reversed in part. The case is remanded for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Edward R. Korman of the United States District Court for the Eastern District of New York, sitting by designation
 
 
 [1]
 The district court dismissed every cause of action in which defendant Carmel was involved, but did not dismiss Carmel as a defendant. On appeal, Carmel claims qualified immunity on the ground that no conduct by him remaining in the complaint could violate any right. It may be that the denial of this defendant's motion to dismiss was an oversight. But because we lack jurisdiction now to consider whether the district court properly dismissed the parts of the complaint in which Carmel appears, we decline to hold that the dismissal compels a ruling of qualified immunity
 Defendants Valenti, Ward and Abrams are alleged to have been involved only in the criminal investigation of Connell. These defendants argue that the district court erred in refusing to dismiss them from the case when it dismissed the plaintiffs' claims for retaliatory prosecution and abuse of process; like Carmel, they contend that they are entitled to qualified immunity because a necessary corollary of the court's disposition is a finding that their conduct could not have violated any of plaintiffs' rights. We do not reach that argument, because in denying the defendants' motion for reconsideration, the district court held that the plaintiffs had stated a First Amendment claim based in part upon their allegation that the defendants had attempted to "offer perjured testimony before a grand jury with the intent to obtain an indictment without probable cause." The complaint alleges that Valenti, Ward and Abrams were involved in this effort to obtain perjured testimony, which was related to the actual indictment, but distinct from it. Accordingly, they are not entitled to qualified immunity based on the dismissal of the Fourth Amendment claims.