**Gabriel RAZZANO, Plaintiff,**

v.

**COUNTY OF NASSAU, Nassau County Police Department, Police Commissioner Lawrence W. Mulvey, Detective Samango, Police Officer Mistrotta, Police Officer Limeaux, Anthony Rocco, Representative Carolyn McCarthy, and Mary Ellen Mendelsohn, Defendants.**

**No. 07–CV–3983 (ADS)(AKT).**

United States District Court, E.D. New York.

Feb. 14, 2009.

La Reddola, Lester & Associates, LLP by Robert James La Reddola, Esq., Wendy C. Pelle–Beer, Esq., Of Counsel, Garden City, NY, for Plaintiff.

Nassau County Attorney's Office by Esther D. Miller, Deputy County Attorney, Karen Schmidt, Deputy County Attorney, Liora M. Ben–Sorek, Deputy County Attorney, Of Counsel, Mineola, NY, for Nassau County and the NCPD Defendants.

Office of the General Counsel by John Filamor, Assistant Counsel, Of Counsel, Washington, DC, for Representative Carolyn McCarthy and Mary Ellen Mendelsohn.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On September 19, 2008, Gabriel Razzano ("the Plaintiff" or "Razzano") filed a second amended complaint against the County of Nassau, the Nassau County Police Department ("NCPD"), Police Commissioner Lawrence W. Mulvey, Police Officers Alfred Samaniego, Salvatore Mistretta, William Lemieux, and Anthony Rocco ("the NCPD Defendants"), as well as United States Representative Carolyn McCarthy ("McCarthy"), and Mary Ellen Mendelsohn (collectively "the Defendants"), alleging, among other things, that the Defendants are liable under 42 U.S.C. 1983 for violating his First and Fourteenth Amendment rights. Presently before the Court are motions by the Defendants to dismiss the second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I. BACKGROUND

The following facts are drawn from the Plaintiff's second amended complaint. The Plaintiff is a member of the Minutemen Civil Defense Corps, an organization that purports to be concerned with securing "the borders and coastal boundaries of the United States . . . against the unlawful and unauthorized entry of all individuals, contraband, and foreign military." From March of 2002 until March of 2007, the Plaintiff alleges that he wrote no fewer than fifteen letters to McCarthy concerning his views on illegal immigration. According to the Plaintiff, he was one of McCarthy's constituents throughout this period.

In the early part of 2003, the Plaintiff began writing to McCarthy about the increasing number of undocumented persons living in his community. McCarthy responded to several of the Plaintiff's letters and forwarded to his attention several letters that she had written to the United States Department of Homeland Security and United States Immigration and Customs Enforcement regarding his concerns. The Plaintiff also alleges that he had several conversations about this issue with Jim Hart, McCarthy's former chief of staff.

The Plaintiff alleges that in early March of 2007, he called McCarthy's office in an effort to reach Jim Hart. When the Plaintiff was informed that Hart no longer worked for McCarthy, the Plaintiff requested a return call from the Congresswoman's new chief of staff. On March 12, 2007, the Plaintiff went to McCarthy's office in person to request an appointment with her. McCarthy's staff informed the Plaintiff that he was not a member of her congressional district. Nevertheless, the Plaintiff returned to Representative McCarthy's office on March 19, 2007 again seeking an appointment with the Congresswoman.

The Congresswoman's staff again told the Plaintiff that he was not one of her constituents and suggested that he inquire with the Nassau County Board of Elections to clarify any confusion about his appropriate congressional district. According to the Plaintiff, the Nassau County Board of Elections provided him with a Certificate of Registration indicating that he was, in fact, a member of McCarthy's congressional district. The Plaintiff alleges he then returned to McCarthy's office with the intention of requesting an appointment with the Congresswoman.

The Plaintiff alleges that while he was waiting in the reception area of McCarthy's office, he was approached by Detective Alfred Samaniego of the NCPD. According to the Plaintiff, Detective Samaniego told the Plaintiff to stop "an-

noying" McCarthy, asked him not to contact the Congresswoman's office, and then escorted the Plaintiff to the elevator.

Razzano alleges that, after he and Detective Samaniego encountered McCarthy in the lobby, Razzano told her "Ms. McCarthy, I have been trying to meet with you". The Plaintiff alleges that he received a phone call later that day from Detective Samaniego who informed him that the Nassau County Board of Elections erred in telling the Plaintiff that he was a member of McCarthy's district and that he should cease all communications with the Congresswoman and her staff.

The following day, on March 20, 2007, the Plaintiff received a phone call from his mother who informed him that NCPD officers Salvatore Mistretta and William Lemieux were at his home to confiscate his nine rifles and fifteen handguns. Officers Mistretta and Lemieux allegedly informed the Plaintiff that the weapons were being seized because the NCPD had received a 911 call about the incident at McCarthy's office. The Plaintiff alleges that the call to 911 was made by Mary Ellen Mendelsohn, a member of McCarthy's staff. The NCPD officers informed him that, under such circumstances, it was departmental policy to seize the weapons for a 90 day "cooling" period. One week after the weapons were confiscated, the Plaintiff received a receipt for the weapons seized.

Thereafter, the Plaintiff received a letter dated April 24, 2007, in which Nassau County Department Chief Anthony Rocco informed the Plaintiff that his license to carry a weapon was being revoked after the NCPD reviewed the incident at McCarthy's office. Rocco's letter noted that the Plaintiff had become "increasingly obsessed with the day laborer situation," and that the Plaintiff's "actions [caused] great concern over [his] suitability to pos-

sess a pistol license." The Plaintiff alleges that, in light of the Defendants' actions, he no longer engages in various forms of expressive activity—such as attending anti-immigration demonstrations and writing letters to the editor—because he fears retaliation from the Defendants.

## II. DISCUSSION

### A. Standard—12(b)(6) Motion to Dismiss

In considering a 12(b)(6) motion to dismiss, " '[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir.2001) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). In this regard, the Court must "accept all of the plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Starr v. Georgeson S'holder, Inc.*, 412 F.3d 103, 109 (2d Cir.2005).

A complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The Second Circuit has interpreted *Twombly* to require that a complaint "allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir.2007).

### B. Whether the Plaintiff May Sue the NCPD as a Separate Municipal Entity

■ The Plaintiff has asserted several causes of action against the NCPD, includ-

ing claims for violations of Section 1983 as well as common law claims for conversion and replevin. However, the NCPD must be removed from this action because, as this Court has observed, "under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dept.*, 224 F.Supp.2d 463, 477 (E.D.N.Y. 2002). Accordingly, the second amended complaint is dismissed in its entirety as against the NCPD.

## C. The Plaintiff's Claims Under Section 1983

▆▆▆ In order to state a valid claim under 42 U.S.C. § 1983, a plaintiff must show that the conduct in question deprived him of a right, privilege, or immunity secured by the Constitution or the laws of the United States, and that the acts were attributable at least in part to a person acting under color of state law. *Washington v. County of Rockland*, 373 F.3d 310, 315 (2d Cir.2004). It is well-settled that Section 1983 "is not itself a source of substantive rights." *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). In this sense, Section 1983 merely provides "a method for vindicating federal rights elsewhere conferred," such as those conferred by the First or Fourteenth Amendments to the Constitution. *Patterson*, 375 F.3d at 225 (citing *Baker*, 443 U.S. at 144 n. 3, 99 S.Ct. 2689). Here, in addition to alleging violations of his right to due process under the Fourteenth Amendment, the Plaintiff also alleges that the Defendants deprived him of his First Amendment rights to free speech and to petition government for the redress of grievances.

## 1. First Amendment

▆▆▆ The Plaintiff's claim, in essence, is that the Defendants retaliated against him by confiscating his weapons because he sought to meet with McCarthy and discuss with her his views about illegal immigration. A plaintiff asserting a retaliation claim under the First Amendment must allege that (1) he has an interest protected by the First Amendment; (2) the defendant's actions were motivated by or substantially caused by the plaintiff's exercise of that right; and (3) the defendant's action effectively chilled the exercise of the plaintiff's First Amendment rights." *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004). Although the Plaintiff alleges that the Defendants have deprived him of separate rights guaranteed by the First Amendment, the Second Circuit has held that the "right to petition the government for redress of grievances ... is subject to the same constitutional analysis as the right to free speech." *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1059 (2d Cir.1993).

▆▆▆ As a preliminary matter, the Court recognizes that the Plaintiff cannot maintain a cause of action under Section 1983 against Nassau County for a violation of his First Amendment rights in this case. In *Monell v. Dep't of Social Servs. of the City of N.Y.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court found that municipalities could be sued under § 1983 as "persons" within the meaning of that statute only "when the alleged unlawful action implemented or was executed pursuant to a governmental policy or custom." *Reynolds v. Giuliani*, 506 F.3d 183, 190 (2d Cir.2007). Not surprisingly, the Plaintiff has failed to offer allegations that Nassau County has a policy of retaliating against citizens who exercise their First Amendment rights. Ac-

cordingly, the Plaintiff's First Amendment claims under Section 1983 against Nassau County are dismissed.

■ With respect to the other Defendants, even accepting as true all of the Plaintiff's allegations, it is clear that Mendolsohn's decision to call the NCPD and the NCPD Defendants' confiscation of the Plaintiff's weapons were not motivated by the Plaintiff's exercise of his First Amendment rights. The Plaintiff acknowledges that he requested meetings with McCarthy, spoke with her staff, and wrote her numerous letters about illegal immigration over a five year period. The Plaintiff also acknowledges that the only action taken by McCarthy's office in regard to the Plaintiff's expressive activity was to respond to several of his letters and forward his concerns to the appropriate federal agencies.

It was not until the Plaintiff appeared in person at McCarthy's office, twice in the same week after being asked to leave, that Mendelsohn contacted the NCPD. Under the circumstances, it is evident that Mendelsohn's decision to contact the NCPD and the NCPD Defendants' decision to confiscate the Plaintiff's weapons were not motivated by the Plaintiff's expressive activity but his confrontation with McCarthy and her staff. Thus, the Plaintiff has failed to adequately allege the second required element of a retaliation claim under the First Amendment—a causal relationship between his expressive activity and the Defendants' actions.

■ However, even if the Plaintiff had met his burden at the pleading stage, McCarthy, Mendelsohn, and the NCPD Defendants would still be entitled to qualified immunity in this case. "At the motion to dismiss stage … a defendant is entitled to the shield of qualified immunity if the allegations of the complaint fail to state a claim that his conduct violated "clearly established statutory or constitutional

rights of which a reasonable person would have known." *Charles W. v. Maul*, 214 F.3d 350, 356–57 (2d Cir.2000). A right is clearly established, for qualified immunity purposes, when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right …" *Connell v. Signoracci*, 153 F.3d 74, 80 (2d Cir.1998) (citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). "Even where a right is clearly established, an official is entitled to qualified immunity nevertheless if 'it was objectively reasonable for the public official to believe that his acts did not violate th[at] right[ ]." *Connell*, 153 F.3d at 91 (citing *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir.1991)).

■ Under the facts alleged, it was objectively reasonable for Mendelsohn and the NCPD Defendants to believe that they were not violating the Plaintiff's First Amendment rights. Mendelsohn called the NCPD because McCarthy and her staff felt threatened by the Plaintiff not because they sought to punish him for his views on immigration reform. The NCPD confiscated the Plaintiff's weapons—after an investigation into the incident—not because the Department objected to the Plaintiff's expressive activity but because it believed that the Plaintiff's behavior warranted revoking his pistol license. Accordingly, the Plaintiff's Section 1983 First Amendment claims against Mendelsohn, McCarthy, and the NCPD Defendants are dismissed. Because the Plaintiff's constitutional tort claim in Count VII is predicated upon a violation of the First Amendment, it is dismissed as well. As there are no remaining causes of action that apply to Detective Samaniego, the second amended complaint is dismissed in its entirety as against him.

### 2. Fourteenth Amendment—Due Process

The Plaintiff alleges that Nassau County has a policy of "routinely and wrongly confiscat[ing] firearms ... without providing a mechanism for the one [sic] reclamation of property," and that the County's decision to take his weapons after the incident at McCarthy's office violated his due process rights because he was not afforded proper notice of a hearing to challenge the seizure. The Second Circuit has recognized that "the Due Process Clause does not protect against all deprivations of constitutionally protected interests in life, liberty, or property, 'only against deprivations without due process of law.'" *Rivera–Powell v. New York City Bd. of Elections*, 470 F.3d 458, 464 (2d Cir.2006) (citing *Parratt v. Taylor*, 451 U.S. 527, 537, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). In this sense, the Due Process Clause requires "such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

"[I]n evaluating what process satisfies the Due Process Clause, 'the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees.'" *Rivera–Powell*, 470 F.3d at 465 (citing *Hudson v. Palmer*, 468 U.S. 517, 532, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), and *Parratt v. Taylor*, 451 U.S. 527, 537, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). Where, as here, a plaintiff alleges a deprivation pursuant to an established state procedure, "the state can predict when it will occur and is in the position to provide a pre-deprivation hearing." Although the County points out that it apprised the Plaintiff of his *postdeprivation* remedies, in such instances, "the availability of post-deprivation procedures will not, *ipso facto*, satisfy due process."

*Rivera–Powell*, 470 F.3d at 465 (citing *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir.1996)). Instead, courts must look to the three-part test articulated by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. at 334, 96 S.Ct. 893, to determine what level of process is due under the circumstances.

Under the *Mathews* test, courts weigh: (1) the private interest affected by the state action; (2) the risk of erroneous deprivation through the procedures used and the value of additional procedural safeguards; and (3) the government's interest in taking the challenged action. *Id.* at 335, 96 S.Ct. 893. It is clear that the Plaintiff has a property interest in the weapons that were seized. However, the parties have provided the Court with virtually no information about the County policy at issue. Therefore, at this stage, the Court cannot weigh the second and third *Mathews* factors. *See Ciambriello v. County of Nassau*, 292 F.3d 307, 319 (2d Cir.2002) (observing that "[t]he determination of whether one is entitled to a pre-deprivation hearing is fact-specific ..."). Accordingly, the Plaintiff's Due Process claim under Section 1983 survives as against Nassau County and the remaining NCPD Defendants.

### 3. Conspiracy

The Plaintiff alleges that McCarthy and Mendelsohn conspired with the County to deprive him of his First and Fourteenth Amendment rights. In order to state a viable conspiracy claim under Section 1983, a plaintiff must show: "(1) an agreement between two or more state actors or a state actor and a private entity (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal, and causing some harm." *Ciambriello*, 292 F.3d at

324–25. "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed ..." *Id.* at 325.

Here, the Plaintiff has failed to offer anything more than conclusory allegations suggesting that McCarthy and Mendelsohn "act[ed] in concert," with the County to deprive him of his constitutional rights when Mendelsohn filed a "false and unjustified," complaint with the NCPD. Such vague allegations are clearly not sufficient to state a Section 1983 conspiracy with the requisite particularity. Accordingly, the Defendants' motions to dismiss Count VIII are granted.

## D. The Plaintiff's State Law Claims

 In Counts IV and V of the second amended complaint, the Plaintiff asserts causes of action for conversion and replevin against Nassau County and the NCPD Defendants. The Defendants contend that these causes of action must be dismissed because the Plaintiff failed to plead that he filed a timely notice of claim as required by N.Y. Gen. Mun. Law § 50–e and N.Y. Gen. Mun. Law § 50–i. These Sections require any party asserting a claim sounding in tort against a municipal entity, or its employees acting in the scope of their employment, to file a notice of claim within 90 days of the incident giving rise to the claim. Under Section 50–i, "[a] plaintiff is required to affirmatively plead in his complaint that he has filed a notice of claim." *Hyde v. Caputo,* 2001 WL 521699, at *4 (E.D.N.Y. May 11, 2001) (citing *Davidson v. Bronx Mun. Hosp.,* 64 N.Y.2d 59, 61–62, 484 N.Y.S.2d 533, 473 N.E.2d 761 (1984)).

Here, although the Plaintiff asserts that he filed a timely notice of claim, he failed to plead compliance with these provisions in his initial complaint. The Court believes that these circumstances do not warrant the dismissal of the Plaintiff's common law tort claims. Nassau County and the NCPD Defendants received the timely notice to which they were entitled under the statute. The fact that the Plaintiff failed to plead compliance with this requirement in his complaint is only a technical error. The Plaintiff is granted leave to amend his second amended complaint to reflect that he filed a timely notice of claim pursuant to Section 50–e and Section 50–i.

## E. The Plaintiff's Motion to Amend the Second Amended Complaint

 A motion to amend is governed by Rule 15(a) of the Federal Rules of Civil Procedure which states that leave to amend "shall be freely given when justice so requires." "Leave to amend should be denied only because of undue delay, bad faith, futility, or prejudice to the non-moving party, and the decision to grant or deny a motion to amend rests within the sound discretion of the district court." *DeFazio v. Wallis,* 2006 WL 4005577, at *1 (E.D.N.Y. Dec. 9, 2006) (citing *Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.,* 404 F.3d 566, 603–04 (2d Cir.2005); *Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995)). A proposed amendment is futile if the proposed claim could not withstand a 12(b)(6) motion to dismiss. *Lucente v. IBM Corp.,* 310 F.3d 243, 258 (2d Cir.2002).

 Here, the Plaintiff seeks leave to amend his complaint for a third time to add additional information uncovered in discovery. The Plaintiff's motion is denied to the extent that he seeks leave to add additional allegations regarding his First Amendment or conspiracy claims under Section 1983. The Court is hard-pressed to imagine any additional allegations that would strengthen these claims to a point

where they would withstand a subsequent 12(b)(6) motion. However, the Court will grant the Plaintiff leave to amend the second amended complaint in order to: (1) elucidate the County's policy of seizing weapons without predeprivation notice; and (2) explain the involvement, if any, that each remaining Defendant had in implementing or executing this policy.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the second amended complaint is dismissed in its entirety as to the Nassau County Police Department, Detective Samaniego, Carolyn McCarthy and Mary Ellen Mendelsohn, and it is further

**ORDERED,** that the motion to dismiss by Nassau County and the NCPD Defendants is **GRANTED** as to Counts I, II, VI, VII, VIII and **DENIED** as to Counts III, IV, and V, and it is further

**ORDERED,** that the Plaintiff is granted leave to amend his second amended complaint to reflect that he complied with the notice of claim requirement and to amplify his allegations pertaining to Nassau County's policy and the role of the NCPD Defendants in implementing or executing that policy, and it is further

**ORDERED,** that the amended caption is to read:

GABRIEL RAZZANO, Plaintiff,

-against-

COUNTY OF NASSAU, POLICE COMMISSIONER LAWRENCE W. MULVEY, SALVATORE MISTRETTA, WILLIAM LEMIEUX, ANTHONY ROCCO, Defendants.

**SO ORDERED.**