Tracey **ROBISCHUNG–WALSH** as the Executrix of the Estate of Dennis T. Walsh, Plaintiff,

v.

**NASSAU COUNTY POLICE DEPART-MENT, County of Nassau, Lawrence R. Mulvey, Police Commissioner, and James Lawrence, Former Police Commissioner, individually and in their official capacities, Defendants.**

No. 09CV3567 (ADS)(ETB).

United States District Court, E.D. New York.

March 30, 2010.

Leeds Morelli & Brown, by Rick Ostrove, Esq., Of Counsel, Carle Place, NY, Attorneys for the Plaintiff.

Office of the Nassau County Attorney, by Liora M. Ben–Sorek, Deputy County Attorney, Matthew B. Weineck, Deputy County Attorney, Donna A. Napolitano, Deputy County Attorney, Mineola, NY, Attorneys for the Defendants.

### MEMORANDUM OF DECISION AND ORDER

ARTHUR D. SPATT, District Judge.

Dennis T. Walsh ("Walsh") committed suicide in October of 2006 after a sixteen-year career in the Nassau County Police Department ("NCPD"). His wife, Plaintiff Tracey Robischung–Walsh ("the Plaintiff"), now brings this civil rights action pursuant to 42 U.S.C. § 1983 in her capacity as the executrix of her husband's estate. She claims that Nassau County ("Nassau") and the current and former police commissioners of the NCPD exhibited deliberate indifference toward her husband in failing to train him and other Nassau police officers in suicide risk assessment and prevention. Presently before the Court is the Defendants' Fed. R.Civ.P. 12(b)(6) motion to dismiss the complaint. For the reasons set forth below, the Defendants' motion is granted.

### I. BACKGROUND

Walsh joined the NCPD in 1990. In May of 2006, after rising through the

ranks of the NCPD, he was promoted to Detective Lieutenant and was given command of the NCPD Gang Unit. As with other police officers, Walsh was exposed to a wide range of traumatic experiences during his career.

Walsh received "minimal" training in suicide prevention and the effects of post-traumatic stress disorder during his time in the NCPD Academy and received no additional training in these areas after leaving the Academy. Pl. Complaint ¶ 16–17. Walsh underwent one psychological examination when he first applied to the NCPD but was never reexamined by the NCPD during his career.

After sixteen years in the NCPD, Walsh began to exhibit signs and symptoms of post-traumatic stress disorder. On October 19, 2006, Walsh committed suicide. The Plaintiff now claims that Nassau, its current police commissioner, Lawrence P. Mulvey, and its former police commissioner, James Lawrence (collectively "the Defendants"), were deliberately indifferent to her deceased husband in failing to "promulgate and enforce appropriate guidelines, regulations, policies or procedures regarding suicide risk assessment and suicide prevention ..." Complaint ¶ 27. On the other hand, the Defendants contend that the Plaintiff has failed to allege a violation of Section 1983 and that, in any event, Mulvey and Lawrence are shielded by the doctrine of qualified immunity.

## II. DISCUSSION

### A. Standard of Review

Under the now well-established *Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The Second Circuit has explained that, after *Twombly*, the Court's inquiry under

Rule 12(b)(6) is guided by two principles. *Harris v. Mills*, 572 F.3d 66 (2d Cir.2009) (citing *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* (quoting *Iqbal*, 129 S.Ct. at 1949). " 'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 129 S.Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and ... determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 129 S.Ct. at 1950.

### B. Whether the Plaintiff May Sue the NCPD as a Separate Municipal Entity

At the outset, the Court notes that the NCPD must be removed from this action because " 'under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued.'" *Razzano v. County of Nassau*, 599 F.Supp.2d 345, 351 (E.D.N.Y.2009) (quoting *Davis v. Lynbrook Police Dept.*, 224 F.Supp.2d 463, 477 (E.D.N.Y.2002)). Accordingly, the complaint is dismissed as against the NCPD.

### C. The Plaintiff's Section 1983 Claim

The Plaintiff contends that the Defendants are liable under Section 1983 on a deliberate indifference theory because they

failed to "promulgate and enforce appropriate guidelines, regulations, policies or procedures regarding suicide risk assessment and suicide prevention ..." Complaint ¶ 27.

■ It is well-established that "a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, Section 1983 "extends liability to a municipal organization where ... the policies or customs it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir.2006). "Municipal liability may also be premised on a failure to train employees when inadequate training 'reflects deliberate indifference to ... constitutional rights.'" *Okin v. Village of Cornwall–On–Hudson Police Dept.*, 577 F.3d 415, 440 (2d Cir.2009) (quoting *City of Canton v. Harris*, 489 U.S. 378, 392, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

■ In establishing the contours of a deliberate indifference claim under Section 1983, the Supreme Court has required plaintiffs to show that municipal policymakers made a "deliberate choice ... from among various alternatives" not to fully train employees. *Harris*, 489 U.S. at 389, 109 S.Ct. 1197. "Such a deliberate choice could be shown where 'in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir.1992) (quoting *Harris*, 489 U.S. at 389, 109 S.Ct. 1197).

■ In the Second Circuit, a plaintiff asserting a deliberate indifference claim must show: "(1) 'that a policymaker knows 'to a moral certainty' that [his] employees will confront a given situation'; (2) 'that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation'; and (3) 'that the wrong choice by the [municipal] employee will frequently cause the deprivation of a citizen's constitutional rights.'" *Okin*, 577 F.3d at 440 (quoting *Walker*, 974 F.2d at 297–98).

■ Here, the Plaintiff does not clearly articulate which of Walsh's constitutional rights the Defendants violated in failing to train NCPD officers in suicide risk assessment and prevention. Instead, she simply makes vague reference to the Fourteenth Amendment. The Plaintiff's argument appears to be that the allegedly inadequate training was itself a violation of Walsh's constitutional rights. However, a municipality's failure to train its employees, in and of itself, is not a violation of Section 1983 unless the inadequate training leads to or causes an *independent* constitutional violation. *Segal*, 459 F.3d at 219. Even assuming that the Plaintiff could articulate an independent violation of Walsh's constitutional rights, she has not alleged a viable deliberate indifference claim.

■ The Plaintiff concedes that Walsh did receive some training in suicide risk assessment and prevention during his time in the NCPD Academy. Where, as here, a municipality has a training program in place, the plaintiff has the added burden to "identify a specific deficiency in the [municipality's] training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir.2004) (quoting *Harris*, 489 U.S. at 391, 109 S.Ct. 1197). The Plaintiff does not point to a specific defi-

ciency in the NCPD's suicide risk assessment and prevention training but suggests, without elaboration, that it was not sufficiently comprehensive. But even if the deficiencies of the NCPD's training program have been alleged with the requisite specificity, the Plaintiff fails to articulate a causal relationship between Walsh's minimal training and the deprivation of his constitutional rights. There are several other fatal problems with the Plaintiff's claim.

First, in the Court's view, it is implausible to allege that Nassau County, Mulvey, and Lawrence knew "to a moral certainty" that NCPD police officers would confront suicidal feelings. Although the Plaintiff highlights various studies showing high rates of suicide among police officers, significantly, there is no well-pleaded allegation that the Defendants were aware that Walsh and other NCPD officers were affected by thoughts of suicide. *See Wray v. City of New York*, 490 F.3d 189, 196 (2d Cir.2007) (quoting *Walker*, 974 F.2d at 297) (observing that "a policymaker does not exhibit deliberate indifference by failing to train employees for rare or unforeseen events."). Second, the Plaintiff does not—and cannot—explain how an NCPD officer's "wrong choice" in this context could possibly lead to the violation of another person's constitutional rights.

In sum, the Plaintiff's deliberate indifference claim suffers from several fatal defects. Although it may be prudent for the NCPD to implement a more comprehensive suicide risk assessment and prevention program, its failure to augment the existing training program does not reflect the Defendants' deliberate indifference to the constitutional rights of its officers. Accordingly, the Defendants'. motion to dismiss the complaint is granted.

### III. CONCLUSION

The Defendants' motion to dismiss the Plaintiff's complaint is granted. The Clerk of the Court is directed to close this case. **SO ORDERED.**